Dear Ms. Butler:
You requested the opinion of this office concerning the transfer of monies to and from certain funds within the State treasury. Your first question pertains to the Excess Revenue Collection Fund ("ERCF") created and established in R.S. 22:1065 and payable from the imposition of a license tax on the business of issuing certain insurance policies. R.S.22:1065(A)(2)(c)(i) provides for the creation and use of the ERCF. Monies are allocated to the ERCF as provided in R.S. 22:1065(A)(2)(c) (iii) as follows in pertinent part:
 "(iii) An amount not to exceed four million five hundred thirty-six thousand dollars shall be deposited in the Excess Revenue Collection Fund . . .; provided that this allocation shall only be made if actual collections from taxes, licenses, and fees from all sources comprising the Official Forecast for Fiscal Year 2001-2002 exceed the Official Forecast for Fiscal Year 2001-2002 adopted by the Revenue Estimating Conference on April 30, 2002, and only if actual collections exceed the forecast by the amount deposited as required by this Item." (Emphasis added)
Your question is what number or line on the April 30, 2002 Official Forecast of the Revenue Estimating Conference (the "Conference") should be used to compare to actual collections. The Conference is constitutionally created by Art. VII, Sec. 10 to "prepare and publish initial and revised estimates of money to be received by the state general fund and dedicated funds for the current and next fiscal years which are available for appropriation . . . The most recently adopted estimate of money available for appropriation shall be the official forecast."
General rules of statutory interpretation include the following provisions of our Civil Code and Revised Statutes:
 C.C. art. 9: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
 C.C. art. 10: "When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law."
 C.C. art. 11: "The words of a law must be given their generally prevailing meaning . . ."
 C.C. art. 12: "When the words of a law are ambiguous, their meaning must be sought be examining the context in which they occur and the text of the law as a whole."
 C.C. art. 13: "Laws on the same subject matter must be interpreted in reference to each other."
 La.R.S. 1:3: "Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning . . ."
 La.R.S. 1:4: "When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."
Every constitutional and statutory provision must be interpreted in light of the purpose of the provision and the public policy interest it furthers. Breaux v. Hoffpauir, 674 So.2d 234 (La. 1996), rehearing denied; Radiofone, Inc. v. City of New Orleans, 630 So.2d 694 (La. 1994); State v. Farris, 667 So.2d 337 (La.App. 1st Cir. 1995).
The Conference obtains information from the State Budget Office and the Legislative Fiscal Office which it considers in adopting a forecast. A copy of the Conference's Fiscal Year 02 Forecast ("Schedule `A'") is attached. As you will note, the April 30, 2002 Official Forecast was based upon the numbers estimated by the Legislative Fiscal Office (except for the royalty number which was increased to the amount estimated by the State Budget Office). Schedule A lists various revenues grouped by source, the total of which equals Total Taxes, Licenses and Fees. From Total Taxes, Licenses and Fees, Dedications are subtracted and the difference is the State General Fund Revenue Direct Subtotal. To the State General Fund Revenue Direct Subtotal, in the April 30, 2002 Official Forecast Income from the tax amnesty program, Riverwood corporate income and a transfer from the Incentive Fund was added with the sum equaling "Total State General Fund Revenue Direct".
The additional allocation to the ERCF is to occur only if actual collections from taxes, licenses, and fees from all sources comprising the Official Forecast for Fiscal Year 2001-2002 exceed the Official Forecast for that year and only if actual collections exceed the forecast by the amount deposited. This raises the question of what line on Schedule A of the April 30, 2002 meeting of the Conference is the Official Forecast.
As stated in La. Const. Art. VII, Sec. 10(B), the Conference is to estimate money to be received by the state general and dedicated funds which are available for appropriation. La. Const. Art. VII, Sec. 10(J) defines "state general fund and dedicated funds" as "all money required to be deposited in the state treasury, except that money the origin of which is:
(1) The federal government.
 (2) Self-generated collections by any entity subject to the policy and management authority established by Article VIII, Sections 5 through 7.
 (3) A transfer from another state agency, board or commission."
"Money available for appropriation" is defined in R.S. 39:2(26) to mean "the amount of money to be received for a fiscal year by the state general fund and dedicated funds, exclusive of federal funds and those amounts appropriated or allocated by the Constitution of Louisiana."
Based upon the constitutional requirement that the Conference estimate the state general fund and dedicated funds which are available for appropriation and the definition of "money available for appropriation", we are of the opinion that the Official Forecast for April 30, 2002 is Total Taxes, Licenses and Fees plus income from amnesty, corporate income from Riverwood and transfers from the Incentive Fund. We recognize that Schedule A does not contain a line which totals these numbers nor does it contain a line entitled "Official Forecast". Schedule A is structured to show the dollar amount of moneys available for appropriation from the state general fund, which is necessary for preparation of the budget. Schedule A subtracts Dedications from Total Taxes, Licenses and Fees to equal State General Fund Revenue Direct Subtotal. However, Dedications are required by the Constitution to be part of the Official Forecast.
Thus in order to make the calculation required by R.S. 22:1065(A)(2)(c) (iii) to determine whether the ERCF should get an additional allocation of $4,536,000, actual collections of Taxes, Licenses and Fees plus amnesty income, Riverwood corporate income and the transfer from the Incentive Fund must be compared to the estimate of these items. The estimate totals $8,143.2 million[1]. We do not have information on the actual collected amounts.
It has been suggested that acutal collections from Taxes, Licenses and Fees should be compared to the Official Forecast. However, since the Official Forecast includes Amnesty income, Riverwood corporate income and the Incentive Fund transfer which are not included in Taxes, Licenses and Fees, we do not think that the comparison would be of like numbers. Surely the legislature did not intend that actual collections would have to exceed the estimate not only by $4,536,000[2] but also by an additional $213.2 million.[3]
Your second question pertains to the Budget Stabilization Fund, found in Section 10.3 of Article VII of the Louisiana Constitution. You advised that certain monies (mineral severance taxes collected through the Department of Revenue's amnesty program) fall within two separate sections of Section 10.3[4]. The monies are part of "all revenues received in each fiscal year by the state ¼ as a result of the production of or exploration for minerals ¼ including severance taxes" as described in Subsection (A)(2)(a), but they are also within the definition of "any money designated in the official forecast as nonrecurring as provided in Article VII, Section 10(D)(2)" found in Subsection (A)(3). The Treasury thus included the severance taxes in computing the "base" and "excess" figures as required in Section 10.3(A)(2)(a) and also included the amount certified as "non-recurring" in finding the total of "any money designated in the official forecast as nonrecurring as provided in Article VII, Section 10(D)(2)".
Members of the legislative staff have now suggested to you that if the amnesty severance taxes are included in the Section 10.3(A)(3) figure, it should not be included in the Section 10.3(A)(2)(a) computation. Your office read the two sections as mutually exclusive directives and included the amnesty severance funds in each computation. You advised that this reading was based largely on the fact that Article VII, Section 10.5(B) (which establishes the Mineral Revenue Audit and Settlement Fund and funds it with mineral revenues) reads "Any revenues deposited in and credited to the fund shall not be considered mineral revenues for purposes of the Revenue Stabilization Mineral Trust Fund as provided in Article VII, Section 10.3 of this constitution[5]." Since Section 10.5(B) shows a clear legislative intent to exclude certain sums from the computation required by the section and since Section 10.3 does not, your office proceeded under the understanding that the legislature did not want to exclude any sums in the Section 10.3 computations.
Constitutional provisions are to be construed and interpreted by the same rules as are other laws. P G Retailers, Inc. v. Wright,590 So.2d 1272 (La.App. 1st Cir. 1991), rehearing denied; City of NewOrleans v. Scramuzza, 507 So.2d 215 (La. 1987); and Firefighters'Retirement System v. Landrieu, 572 So.2d 1175 (La.App. 1st Cir. 1990), writ denied. In construing constitutional provisions or amendments, one should ascertain and give effect to the intent of both framers of the amendment and of the people who adopted it and should therefore consider the objects sought to be accomplished by the adoption of the provision.Board of Commissioners of Orleans Levee District v. Department of NaturalResources, 496 So.2d 281 (La. 1986).
When a constitutional provision is clear and unambiguous, and its application does not lead to absurd consequences, it must be applied as written without further interpretation in search of its intent.Louisiana Associated General Contractors, Inc. v. State, 95-2105 (La. 3/8/96), 669 So.2d 1185. Constitutional provisions should be construed so as to give effect to the purpose indicated by a fair interpretation of the language used, and in the event of conflict or inconsistency, provisions should be construed, if possible, to allow each provision to stand and be given effect. Eiche v. Louisiana Board of Elementary Secondary Education, 582 So.2d 186 (La. 1991); State ex rel. Guste v.Board of Commissioners, 456 So.2d 605 (La. 1984); Barnett v. Develle,289 So.2d 129 (La. 1974). If one constitutional provision addresses a subject in general terms, and another with the same subject in a more detailed way, the two should be harmonized if possible, but if there is any conflict, the latter will prevail. Arata v. Louisiana Stadium Exposition District, 254 La. 579, 225 So.2d 362 (1969), cert. denied sub nom., 396 U.S. 279, 90 S.Ct. 569, 24 L.Ed.2d 467 (1970). Where a constitutional aim is evident and explicit from the language used, courts need not consider the historical basis for a constitutional prohibition and may not, by separately considering related constitutional provisions, arrive at a construction that detracts from the effectiveness or manifest meaning and purpose of the related provisions. Barnett v.Develle, 289 So.2d 129, 146 (La. 1974).
The object sought to be accomplished by the adoption of La. Const. Art.VII, Sec. 10.3(A) is to set forth which monies are to be deposited into the Fund, as follows:
 (1) All monies available for appropriation in excess of the expenditure limit.
 (2) Mineral revenues received by the state in excess of $750 million, after allocation of said mineral revenues have been made to the Bond Security and Redemption Fund [Art. VII, Section 9], political subdivisions of the state [Art. VII, Sections 4(D) and (E)], and to the Conservation [Art. VII, Section 10-A] and Quality Trust Funds [Art. VII, Section 10.1].
 (3) Twenty-five percent of any money designated in the official forecast as nonrecurring as provided in Article VII, Section 10(D)(2).
 (4) Any money appropriated to the fund by the legislature, including any money designated in the official forecast as provided in Article VII, Section 10(D)(2).
Practically, certain money may meet one or more of these descriptions or factors. The constitution does not provide that only one of the factors may apply to specific monies nor does the constitution give guidance as to which of the four factors should be used in the event more than one applies. As you noted, last fiscal year mineral severance taxes collected through the Department of Revenue's amnesty program met both subsections (2) and (3). The severance tax amnesty monies were included in mineral revenues in excess of $750 million and were determined to be nonrecurring by the Revenue Estimating Conference. We cannot advise that you consider subsection (2) and ignore subsection (3) or vice versa. All sections of the constitution must be considered and given effect unless there is an irreconcilable conflict. We do not find a conflict between these provisions. Without guidance from the constitution, it is the opinion of this office that both subsections must be used in calculating which monies are to be deposited in the Fund.
Trusting that this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ________________________________ MARTHA S. HESS Assistant Attorney General
RPI/MSH
DATE RELEASED: February 4, 2003
[1] Taxes, Licenses and Fees were estimated at $7,930.0 million, Income from Amnesty at $180.7 million, Corporate Income from Riverwood at $29.5 million and transfers from the Incentive Fund at $3.0 million.
[2] R.S. 22:1065(A)(2)(c) (iii) mandates that actual collections exceed the forecast by the amount deposited as required by this item, which is R4,536,000.
[3] Income from Amnesty was estimated at $180.7 million, Riverwood Corporate Income at $29.5 million and Incentive Fund transfers at $3.0 million for a total of $213.2 million.
[4] "(A) There is hereby established in the state treasury a Budget Stabilization Fund hereinafter referred to as the fund. Money shall be deposited in the fund as follows:
(1) All money available for appropriation from the state general fund and dedicated funds in excess of the expenditure limit . . .
(2)(a) All revenues received in each fiscal year by the state in excessof seven hundred fifty million dollars, hereinafter referred to as the base, as a result of the production of or exploration for minerals, hereinafter referred to as mineral revenues, including severance taxes, royalty payments, bonus payments, or rentals, and excluding . . . shall be deposited in the fund after the following allocations of said mineral revenues have been made:
(i) To the Bond Security and Redemption Fund as provided by Article VII, Section 9(B) of this constitution.
(ii) To the political subdivisions of the state as provided in Article VII, Sections 4(D) and (E) of this constitution.
(iii) As provided by the requirements of Article VII, Section 10-A and 10.1 of this constitution.
* * *
(3) Twenty-five percent of any money designated in the officialforecast as nonrecurring as provided in Article VII, Section 10(D)(2) of this constitution shall be deposited in and credited to the fund.
(4) Any money appropriated to the fund by the legislature including any appropriation to the fund from money designated in the official forecast as provided in Article VII, Section 10(D)(2) of this constitution shall be deposited in the fund." (Emphasis added)
[5] La. Const. Art. VII, Sec. 10.3 was amended by Act No 1501 of the 1997 Regular Session of the Louisiana Legislature, and approved by the voters on October 3, 1998, effective November 5, 1998. The amendment, inter alia, changed the name of the "Revenue Stabilization/Mineral Trust Fund" to the "Budget Stabilization Fund" and added subsections (2)(b), (3) and (4).
 Schedule A
 REVENUE ESTIMATING CONFERENCE FISCAL YEAR 02 FORECAST (In Million $)
 SBO Forecast LFO Forecast
 Official SBO LFO + (-) + (-)
 Forecast Forecast Forecast Official Official
REVENUE SOURCE 3/15/02 4/30/02 4/30/02 Forecast Forecast
Alcoholic Beverage 16.7 16.0 16.2 0.3 0.5
Beer 36.3 37.2 37.2 0.9 0.9
Corporate Franchise 250.0 240.0 250.0 -10.0 1.1
Corporate Income 173.8 230.0 171.4 56.2 -2.4
Total Corp. Fran. Inc. 423.8 470.0 421.4 46.2 -2.4
Gasoline 430.0 427.4 434.0 -2.6 4.0
Gift 5.5 5.2 5.5 -0.3 0.0
Hazardous Waste 4.8 4.0 4.8 -0.8 0.0
Individual Income 1,832.9 1,858.3 1,842.9 25.4 10.0
Inheritance 57.0 68.3 63.0 1.3 -4.0
Natural Gas Franchise 6.0 6.6 6.0 0.6 0.0
Public Utilities 3.0 2.5 3.0 -0.5 0.0
Auto Rental Excise 4.5 4.8 4.5 0.3 0.0
Sales Tax — General 2,452.6 2,357.6 2,362.6 -95.0 -90.0
Severance 468.0 472.6 480.0 4.6 12.0
Special Fuels 119.0 118.6 117.3 -0.4 -1.7
Supervision/Inspection Fee 5.8 6.2 5.5 0.4 -0.3
Tobacco 103.2 103.6 104.2 0.4 1.0
Unknown Owners 12.5 12.5 18.0 0.0 5.5
Miscellaneous Receipts 1.9 1.8 1.9 -0.1 0.0
Total — Dept. of Revenue 5,992.5 5,973.4 5,928.0 -19.1 -64.5
Royalties 224.0 275.0 275.0 51.0 51.0
Rentals 12.3 14.0 12.3 1.7 0.0
Bonuses 20.0 22.0 22.5 2.0 2.5
Mineral Interest 2.9 2.0 2.9 -0.9 0.0
Total — Natural Res. 259.1 313.0 312.6 53.9 53.5
Interest Earnings 38.0 38.0 38.0 0.0 0.0
Interest Earnings (TTF) 7.0 7.0 7.0 0.0 0.0
Var. Agy. Receipts 24.0 21.7 24.0 -2.3 0.0
Agency SGR Over-Collections 15.0 14.3 15.0 -0.7 0.0
Bond Reimbursements 13.9 13.9 13.9 0.0 0.0
Quality Ed. Support Fund 48.7 48.7 48.7 0.0 0.0
Lottery Proceeds 112.7 12.7 112.7 0.0 0.0
Land-Based Casino 52.5 57.5 57.6 5.0 5.1
Tobacco Settlement 172.1 194.9 194.9 22.8 22.8
DHH Provider Fees 91.4 91.4 91.4 0.0 0.0
Total — Treasury 575.3 600.0 603.2 24.7 27.9
Excise License 114.0 120.9 125.0 6.9 11.0
Ins. Rating Fees (SGF) 32.3 32.3 32.3 0.0 0.0
Total — Insurance 146.3 153.3 157.3 7.0 11.0
Misc. DPS Permits ABC Permits 10.4 10.4 10.4 0.0 0.0
Titles 22.1 21.3 24.0 -0.8 1.9
Vehicle Licenses 84.0 86.1 87.0 2.1 3.0
Vehicle Sales Tax 280.0 298.0 295.0 18.0 15.0
Riverboat Gaming 329.2 340.9 340.0 11.7 10.8
Racetrack Slots 0.0 7.5 7.5 7.5 7.5
Video Draw Poker 160.0 164.0 165.0 4.0 5.0
Total — Public Safety 885.7 928.2 928.9 42.5 43.2
Total Taxes, Lic., Fees 7,858.9 7,967.9 7,930.0 109.0 71.1
Less: Deductions -1,424.7 -1,474.5 -1,478.3 -49.8 -53.6
State General
Fund Revenue Direct Sub. 6,434.2 6,493.4 6,451.6 59.2 17.4
Add: Income from Amnesty 178.4 180.7 180.7 2.3 2.3
Add: Corp. Income from Riverwood 29.5 29.5 29.5 0.0 0.0
Transfer from Incentive Fund 3.0 3.1
Total State General
Fund Revenue Direct 6,642.1 6,706.6 6,664.8 64.5 22.7
Total Recurring Revenue 6,463.7 6,522.9 6,481.1 59.2 17.4
Total Non-Recurring Revenue 150.9 155.6 155.6 4.7 4.7
DEDICATIONS Schedule B
 SBO Forecast LFO Forecast
 LFO SBO LFO + (-) + (-)
 Forecast Forecast Forecast Official Official
Dedication 6/07/02 4/30/02 4/30/02 Forecast Forecast
Gasoline — Port of NO L.C. Harbor 0.5 0.5 0.5 0.0 0.0
Motor Fuels — Transp. Trust Fund 438.7 436.3 440.5 -2.4 1.8
Motor Vehicles Lic. — TTF 33.3 34.2 34.5 0.9 1.2
Aviation Tax — TTF 5.0 5.0 5.0 0.0 0.0
TTF/Interest 8.4 8.0 8.4 -0.4 0.0
Motor Fuels — TIME Program 109.8 109.2 110.3 -0.6 0.5
Motor Veh. Lic. — Hwy. Fund #2 9.7 9.9 10.0 0.2 0.3
Severance Tax — Parishes 45.9 42.5 47.0 -3.4 1.1
Severance Tax — Forest Prod. Fund 3.4 3.4 3.4 0.0 0.0
Royalties — Parishes 22.4 27.5 27.5 5.1 5.1
Royalties — DNR Legal Support Fund 0.0 0.0 0.0 0.0
Wetlands Fund 21.0 25.0 25.0 4.0 4.0
Quality Ed. Support Fund 48.7 48.7 48.7 0.0 0.0
Sales Tax Econ. Development 13.0 12.5 12.6 -0.5 -0.4
Telephone Property Relief 0.0 0.0 0.0 0.0
Excise Lic. — 2% Fire Ins. 9.1 9.2 9.1 0.1 0.0
Excise Lic. — Fire Mars. Fd. 6.7 6.8 6.7 0.1 0.0
Excise Lic. — LSU Fire Tr. 1.3 1.3 1.3 0.0 0.0
Stabilization Fund 0.0 0.0 0.0 0.0
Tourist Promotion Fund 17.0 17.0 17.0 0.0 0.0
Environmental Trust Fund 4.8 4.0 4.8 -0.8 0.0
Insurance Fees 32.3 32.3 32.3 0.0 0.0
Bond Reimbs. Paid by Others 5.7 5.7 5.7 0.0 0.0
Video Draw Poker 46.8 47.4 48.2 0.6 1.4
Racetrack Slots 0.0 7.5 7.5 7.5 7.5
Lottery Proceeds Fund 112.2 112.2 112.2 0.0 0.0
Land-based Casino 0.0 0.0 0.0 0.0
SELF Fund 103.0 118.2 109.8 15.2 6.8
Riverboat `Gaming' Enforce. 53.8 54.9 55.6 1.1 1.8
Compulsive Gaming Fund 2.0 2.0 2.0 0.0 0.0
Supervision/Inspection Fee 5.8 6.2 5.5 0.4 -0.3
Insp. Fee/Gasoline, Ag. Petr. Fund 0.9 0.8 0.9 -0.1 0.0
Tobacco Settlement 172.1 194.9 194.9 22.8 22.8
DHH Provider Fees 91.4 91.4 91.4 0.0 0.0
Total Dedications 1,424.7 1,474.5 1,478.3 49.8 53.6

Some columns and lines do not add precisely due to rounding.